**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

<table>
<tr><td>

In re:

**NORANDA ALUMINUM, INC.,** *et al.*,

                Debtors.

</td><td>

**Case No. 16-10083-399**

**Chapter 11**

**Jointly Administered**

Re: Docket No.875

</td></tr>
</table>

**ORDER ESTABLISHING BIDDING PROCEDURES FOR THE SALE**
**OF THE UPSTREAM BUSINESS AND GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the Debtors (A) for an order (this "Order" or

the "Bidding Procedures Order"):  (i) approving the Debtors' proposed auction and bidding

procedures (the "Bidding Procedures"), in substantially the form attached hereto as Exhibit A, to

be employed in connection with the proposed sale(s) (the "Sale(s)") of all, or substantially all, of

the assets comprising the Debtors' primary aluminum production business (the "Upstream

Business") operated by Noranda Aluminum, Inc., Noranda Bauxite Ltd. and Noranda Alumina

LLC (the "Subject Assets") or one or more categories of the Subject Assets (each a "Lot" and

collectively, the "Lots"), which Lots are identified in an exhibit to the Bidding Procedures,

(ii) establishing procedures for the assumption and assignment of executory contracts and

unexpired leases, including the form and manner of notice of proposed cure amounts (the "Cure

Notice"); (iii) approving the form and manner of notice of the Sale(s), the notice of assumption

and assignment of executory contracts and unexpired leases, and the other notices described

herein; (iv) scheduling (a) a hearing (the "Stalking Horse Hearing"), on expedited notice, to

---

[1]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion or
the Bidding Procedures (as defined below), as applicable.

approve the Debtors' selection of one or more stalking horse bidders (each a "<u>Stalking Horse Bidder</u>"), if any, and the provision of Bid Protections (as defined below) to such Stalking Horse Bidder, if necessary; (b) an auction (the "<u>Auction</u>") if the Debtors receive two or more timely and acceptable Qualified Bids and (c) a hearing (the "<u>Sale Hearing</u>") to consider approval of the Sale(s) of the Upstream Business; and (v) granting related relief and (B) an order(s) (each, a "<u>Sale Order</u>"), in a form to be posted to the Case Website, (i) authorizing the Sale(s) of the Subject Assets or one or more Lots free and clear of liens, claims, interests, and encumbrances (collectively, the "<u>Interests</u>") to the bidder(s) with the highest or otherwise best bid(s) in accordance with the Bidding Procedures (each, a "<u>Successful Bidder</u>"); (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale; and (iii) granting related relief; and the arguments of counsel made and the evidence adduced at the hearing to approve the Bidding Procedures (the "<u>Bidding Procedures Relief</u>") portion of the Motion (the "<u>Bidding Procedures Hearing</u>"); and the Debtors representing that they provided due and sufficient notice of the Bidding Procedures Hearing and the relief sought therein under the particular circumstances; and it appearing that the Bidding Procedures Relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

## FOUND, CONCLUDED AND DETERMINED THAT:[2]

A.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 364, 365, 503 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

B.      The relief granted herein is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

C.      The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the Bidding Procedures, including the procedures for selecting a Stalking Horse Bidder, the Assumption and Assignment Procedures, the form and manner of the Sale Notice, the Cure Notice and the other notices of the Motion, the Auction and the Sale Hearing as set forth herein, (ii) set the date for the Auction, Stalking Horse Hearing (if necessary), the Sale Hearing and the other dates set forth herein and (iii) grant the relief requested in the Motion as provided herein.

D.      The Debtors' proposed Sale Notice, Cure Notice and other notices contemplated hereunder with respect to the Sale, the Auction, the Assumption and Assignment Procedures, and the Sale Hearing are appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof and no further notice of each is necessary or required.

---

[2]     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.      The Bidding Procedures, substantially in the form attached hereto as
Exhibit A, and incorporated herein by reference as if fully set forth herein are fair, reasonable
and appropriate.

F.      The Assumption and Assignment Procedures are reasonable and
appropriate.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:**

1.      Those portions of the Motion seeking approval of the Bidding Procedures,
to the extent as modified herein and in the exhibits attached hereto, are GRANTED in that:

2.      Any objection to the portions of the Motion seeking approval of the
Bidding Procedures Relief or any other relief granted in this Order, to the extent not resolved,
waived or withdrawn, and any reservation of rights included therein with respect to the Bidding
Procedures Relief, is hereby overruled and denied on the merits; provided, however, that for the
avoidance of doubt, any substantive objections to the portion of the Motion not otherwise
approved or overruled in this Order, including but not limited to any objection to the Sale Order
and/or Sale(s) of the Subject Assets pursuant to any Purchase Agreement, Modified Purchase
Agreement or Stalking Horse Agreement are fully reserved and may be raised again by any party
as a Sale objection.

**Bid Procedures**

3.      The Bidding Procedures in the form attached hereto as Exhibit A and
incorporated herein by reference as if fully set forth in this Order are hereby approved.  The
Debtors, in their reasonable discretion and in consultation with the Consultation Parties (as
defined in the Bidding Procedures), are authorized to take any and all actions necessary or
appropriate to implement the Bidding Procedures.  The failure to specifically include or
reference any particular provision of the Bidding Procedures in this Order shall not diminish or

impair the effectiveness of such procedures, it being the intent of this Court that the Bidding

Procedures be authorized and approved in their entirety.

        4.       The Debtors are authorized, in accordance with the Bidding Procedures, to

require Diligence Parties (other than Credit Parties) to submit written indications of interest

specifying, among other things, the Subject Assets proposed to be acquired, the amount and type

consideration to be offered, and any other material terms.

        5.       The process and requirements associated with submitting a Qualified Bid

are approved as fair, reasonable, and appropriate.  Any disputes or objections to the selection of

Qualified Bid(s), Successful Bid(s), or Backup Bid(s) (all as defined in the Bidding Procedures)

shall be resolved by this Court at the Sale Hearing as set forth herein.

        6.       The DIP Credit Parties and the Pre-Petition Credit Parties shall have the

right (subject in all respects to (i) the Bankruptcy Code, (ii) other applicable law, and (iii) the

Committee's rights with respect to such credit bid as set forth in the DIP Order, including

Paragraph 14(e) of the DIP Order[3] to credit bid all or any portion of the aggregate amount of

their applicable outstanding secured obligations pursuant to section 363(k) of the Bankruptcy

Code, the DIP Order or other applicable law, and any such credit bid shall be subject to the

requirements under the heading "Auction Qualification Process" in the Bidding Procedures.

Nothing herein shall relieve a DIP Credit Party or Pre-Petition Credit Party from its obligations

under the Intercreditor Agreement.  Nothing in this Order shall waive or otherwise impede the

Committee's rights with respect to any credit bid of the Pre-Petition Credit Parties as set forth in

the DIP Order including as provided in Paragraph 14(e) thereof or the rights of any holder of a

---

[3]    As set forth in the *Final Order Granting Debtors' Motion to (i) Authorize Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, 364; (ii) Grant Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §§ 364 and 507, (iii) Provide Adequate Protection to Pre-Petition Credit Parties, (iv) Modify Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507, and (v) Grant Related Relief* [Docket No. 392] (the "DIP Order").

lien having priority over the DIP Liens (as defined in the DIP Order) as set forth in paragraph 3(c) of the DIP Order to object to the Sale of the Upstream Business (including by way of a credit bid) or the approval of any such Sale is otherwise sought from this Court, if the cash proceeds thereof are insufficient to satisfy such secured claims in full.  Solely for purposes of the foregoing objection, the objection deadline on such grounds shall be extended to the date that is two business days following the noticed conclusion of the Auction.  Nothing in this Order shall dictate the disbursement of proceeds from the Sale(s) of any of the Subject Assets and/or specifically identified Lots or combination of Lots.

7.    To the extent a Qualified Bid provides for assumption of all or any part of, or any of the potential liabilities associated with, the Noranda Aluminum Group Retirement Plan, and/or the Noranda Alumina LLC Hourly Pension Plan, and/or the Retirement Plan for Hourly Rated Employees of Noranda Aluminum Inc. and/or any other pension or benefit plans (collectively, the "Pension Obligations"), the Debtors shall request that such Bidder provide forthwith to the Pension Benefit Guaranty Corporation (the "PBGC") the financial information regarding such Bidder on a confidential basis so the PBGC can assess whether it has financial ability to assume the Pension Obligations, and the Debtors shall forward any such financial information on a confidential basis to the PBGC within two (2) business days of receipt.

8.    To the extent the Debtors share with any potential bidders for the Upstream Business the confidential, proprietary, pricing information of Occidental Chemical Corp. ("Oxy") concerning the sale of caustic soda to the Debtors, pursuant to a non-disclosure agreement with such potential bidders, the Court shall have the authority to enforce the non-disclosure agreement for the benefit of Oxy.

6

**Stalking Horse Bidder, Related Bidding Protections and Purchase Agreement**

9.      In accordance with the Bidding Procedures and subject to the rights of parties to object, the Debtors, in consultation with the Consultation Parties, may at any time before August 8, 2016 (or such later date as the Debtors determine in their reasonable discretion in consultation with the Consultation Parties) enter into one or more Stalking Horse Agreements, subject to higher or otherwise better offers at the Auction, with any Stalking Horse Bidder that submits a Qualified Bid acceptable to the Debtors, in consultation with the Consultation Parties, to establish a minimum Qualified Bid at the Auction.

10.      The Stalking Horse Agreement may contain certain customary terms and conditions, including expense reimbursement and/or a break-up fee in favor of the Stalking Horse Bidder (the "Bid Protections") in amounts to be determined by the Debtors in accordance with the Bidding Procedures.

11.      To the extent the Debtors enter into any Stalking Horse Agreements, the Debtors shall seek expedited approval of their entry into such agreement and any Bid Protections included therein together with the terms and conditions under which such Bid Protections would be payable to the Stalking Horse Bidder, on no less than seven (7) days' notice (the "Stalking Horse Hearing").  The Debtors shall serve notice of the Stalking Horse Agreement and the Stalking Horse Hearing on all parties on the Core Parties and any Non-ECF Parties (as those terms are defined in the Case Management Order) and all entities known to have expressed a *bona fide* interest in purchasing any of the Subject Assets since the Petition Date and such other potential purchasers identified by the Consultation Parties (each, a "Stalking Horse Notice").  Notwithstanding anything herein or in the Bidding Procedures to the contrary, all parties in interest, including, but not limited to, the Committee (subject to the terms of the DIP Order with respect to any credit bid by a DIP Credit Party or a Pre-Petition Credit Party), shall have the

right, at any time before 4:00 p.m. (prevailing Central time) one day prior to the commencement

of the Stalking Horse Hearing, to object to any of the terms set forth in the Stalking Horse

Agreement, including, but not limited to, the designation of a Stalking Horse Bidder, the identity

of the Stalking Horse Bidder, the provision of Bid Protections to such Stalking Horse Bidder and

the terms and conditions under which such Bid Protections would be payable to the Stalking

Horse Bidder, the Subject Assets proposed to be acquired, the amount and type consideration to

be offered, and any other material terms.

12.     Each Stalking Horse Notice shall include (i) the identity of the proposed

Stalking Horse Bidder, (ii) a summary of the key terms of the Stalking Horse Agreement

specifying, among other things, the Subject Assets proposed to be acquired, the amount and type

consideration to be offered, and any other material terms, (iii) a summary of the type and amount

of Bid Protections, if any, proposed to be afforded to the Stalking Horse Bidder, and (iv) a copy

of the Stalking Horse Agreement.

**The Bid Deadline**

13.     As further described in the Bidding Procedures, a potential Bidder who

desires to make a Bid on the Subject Assets shall deliver its Bid that satisfies the bidding

requirements set forth in the Bidding Procedures to:  (1) the Debtors, Noranda Aluminum Inc.,

801 Crescent Drive, Suite 600, Franklin, Tennessee 37067; Attn: Dale W. Boyles, CFO

(dale.boyles@noralinc.com); Gail Lehman, General Counsel (gail.lehman@noralinc.com) and

Robert Caruso, CRO (rcaruso@alvarezandmarsal.com); (2) counsel for the Debtors, Paul, Weiss,

Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019,

Attention: Elizabeth R. McColm (emccolm@paulweiss.com), Diane Meyers

(dmeyers@paulweiss.com) and Sarah Harnett (sharnett@paulweiss.com) and Carmody

MacDonald P.C., 120 S. Central Avenue, Suite 1800, St. Louis, Missouri 63105, Attention:

Christopher J. Lawhorn (cjl@carmodymacdonald.com); (3) investment banker for the Debtors, PJT Partners LP, 280 Park Avenue, 20th Floor, New York, NY 10017, Attn: James H. Baird (baird@pjtpartners.com) and Kerry Greer (greer@pjtpartners.com); (4) counsel for the ABL DIP Agent, Parker Hudson Rainer & Dobbs LLP, 303 Peachtree St. NE, Suite 3600, Atlanta, Georgia 30308, Attention: C. Edward Dobbs (edobbs@phrd.com) and Lewis Rice LLC, 600 Washington Ave., Suite 2500, St. Louis, Missouri 63101, Attention: Larry E. Parres (lparres@lewisrice.com); (5) counsel for the Term DIP Agent and Pre-Petition Term Agent, Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, IL, 60614, Attn: Michael D Messersmith (michael.messersmith@kayescholer.com) and Seth J. Kleinman (seth.kleinman@kayesholer.com) and Thompson Coburn LLP, One US Bank Plaza, St. Louis, MO 63101, Attn: Mark V. Bossi (mbossi@thompsoncoburn.com); (6) counsel for the Term DIP Lenders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matt Barr (matt.barr@weil.com) and Robert J. Lemons (robert.lemons@weil.com) and Husch Blackwell LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105, Attn: Marshall C. Turner (marshall.turner@huschblackwell.com); (7) counsel for the Official Committee of Unsecured Creditors (the "Committee"), Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Jeffrey D. Prol (JProl@Lowenstein.com) and Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106-2140, Attn: Lisa A. Epps (lepps@spencerfane.com); (8) financial advisor for the Committee, Houlihan Lokey, Inc., 245 Park Avenue, 20th Floor, New York, NY 10167, Attn: Bradley Jordan (bjordan@hlhz.com); and (9) the Pension Benefit Guaranty Corporation, 1200 K Street, N.W., Suite 340, Washington, DC 20005, Attn:  Michael Baird (baird.michael@pbgc.gov), but only if such Bid includes assumption of any liabilities associated with the Pension Obligations, so as to be received by no later than **5:00 p.m.**

**(prevailing Eastern Time) on September 15, 2016**, subject to extension as provided in the Bidding Procedures (the "Bid Deadline").

### Notices of Sale, Bidding Procedures, Bid Protections and the Sale Hearing

14.    The notices described below are hereby approved, and service or publication thereof (as applicable) as set forth below satisfies the requirements of Rule 2002 of the Federal Rules of Bankruptcy Procedure and constitutes proper, timely, adequate and sufficient notice of the Sale, the Bidding Procedures, the Bid Protections and the Sale Hearing, and no other or further notice shall be required.

15.    Within three (3) Business Days after the entry of this Order, or as soon thereafter as practicable (the "Mailing Date"), the Debtors (or their agents) shall serve a copy of the Sale Notice, substantially in the form attached hereto as Exhibit B, this Order, and the Bidding Procedures by first-class mail, postage prepaid, or by email, where available, upon (a) all entities known to have expressed a *bona fide* interest in purchasing any of the Subject Assets since the Petition Date and such other potential purchasers identified by the Consultation Parties prior to the Mailing Date; (b) all entities known by the Debtors to have asserted any lien, claim or encumbrance in or upon any of the Subject Assets; (c) all federal, state and local environmental, regulatory or taxing authorities or recording offices, including governmental authorities in Jamaica, which have a reasonably known interest in the relief requested by the Motion; (d) the Office of the United States Trustee; (e) the U.S. Securities and Exchange Commission; (f) the Internal Revenue Service; and (g) the Core Parties and any Non-ECF Parties (as those terms are defined in the Case Management Order).

16.    On the Mailing Date, or as soon thereafter as practicable, the Debtors (or their agents) shall serve by first-class mail, postage prepaid, the Sale Notice upon all other

known creditors of the Debtors and all counterparties to the Debtors' executory contracts and unexpired leases.

17.     The Debtors shall publish a notice, substantially in the form of the Sale Notice, on one (1) occasion, in *The Wall Street Journal*, National Edition.  The Debtors are authorized, but not directed to, publish the Sale Notice in additional publications as the Debtors deem appropriate.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

18.     The Sale Hearing to approve the Sale of the Upstream Business shall be held on **September 27, 2016 at 2:00 p.m. (prevailing Central Time)**, subject to extension or adjournment as provided herein or in the Bidding Procedures, at the United States Bankruptcy Court for the Eastern District of Missouri, Southeastern Division, Thomas F. Eagleton United States Courthouse, 111 South Tenth Street, St. Louis, Missouri 63102, Courtroom 5 North, before the Honorable Barry S. Schermer.  At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid(s) and the Back-Up Bid(s).  Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale and there will be no further bidding at the Sale Hearing.  In the event that the Successful Bidder(s) cannot or refuses to consummate the Sale(s) because of the breach or failure on the part of such Successful Bidder, the Debtors may, in accordance with the Bidding Procedures, designate the Back-Up Bid to be the new Successful Bid and the Back-Up Bidder to be the new Successful Bidder, and the Debtors shall be authorized, but not required, to consummate the applicable transaction with the Back-Up Bidder without further order of the Bankruptcy Court.

19.     Objections, if any, to the relief sought in the Sale Order ("Sale
Objection(s)")[4] shall be in writing, filed with the Court, together with proof of service, and
served so as to be received by:  (a) counsel for the Debtors, Paul, Weiss, Rifkind, Wharton &
Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attention:
Elizabeth R. McColm (emccolm@paulweiss.com), Diane Meyers (dmeyers@paulweiss.com)
and Sarah Harnett (sharnett@paulweiss.com) and Carmody MacDonald P.C., 120 S. Central
Avenue, Suite 1800, St. Louis, Missouri 63105, Attention: Christopher J. Lawhorn
(cjl@carmodymacdonald.com); (b) counsel for the ABL DIP Agent, Parker Hudson Rainer &
Dobbs LLP, 303 Peachtree St. NE, Suite 3600, Atlanta, Georgia 30308, Attention: C. Edward
Dobbs (edobbs@phrd.com) and Lewis Rice LLC, 600 Washington Ave., Suite 2500, St. Louis,
Missouri 63101, Attention: Larry E. Parres (lparres@lewisrice.com); (c) counsel for the Term
DIP Agent and Pre-Petition Term Agent, Kaye Scholer LLP, 70 W. Madison Street, Suite 4200,
Chicago, IL, 60614, Attn: Michael D Messersmith (michael.messersmith@kayescholer.com) and
Seth J. Kleinman (seth.kleinman@kayesholer.com) and Thompson Coburn LLP, One US Bank
Plaza, St. Louis, MO 63101, Attn: Mark V. Bossi (mbossi@thompsoncoburn.com); (d) counsel
for the Term DIP Lenders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY
10153, Attn: Matt Barr (matt.barr@weil.com) and Robert J. Lemons (robert.lemons@weil.com)
and Husch Blackwell LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105, Attn:
Marshall C. Turner (marshall.turner@huschblackwell.com); (e) counsel for the Official
Committee of Unsecured Creditors (the "Committee"), Lowenstein Sandler LLP, 65 Livingston
Avenue, Roseland, NJ 07068, Attn: Jeffrey D. Prol (JProl@Lowenstein.com) and Spencer Fane
LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106-2140, Attn: Lisa A. Epps

---

[4]     Procedures for filing objections to the assumption and assignment of relevant executory contracts and unexpired
leases are addressed below.

(lepps@spencerfane.com) ; and (f) the Office of the United States Trustee, 111 S. 10th St., Suite 6.353, St. Louis, Missouri 63102 (collectively, the "Notice Parties"), on or before **September 20, 2016 at 5:00 p.m. (prevailing Central Time)**; provided, however, that objections to the conduct of the Auction or selection of the Successful Bid(s) or Back-Up Bids(s) (the "Supplement") shall be in writing, filed with the Court, together with proof of service, and served so as to be received by the Notice Parties on or before **12:00 p.m. (prevailing Central Time) one (1) day prior to the commencement of the Sale Hearing**.

20.     Failure to file and serve a Sale Objection or Supplement as aforesaid shall be deemed to be consent to the Sale for purposes of Bankruptcy Code section 363(f).

21.     The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties or the Bid Consultation Parties, as applicable, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtors' Chapter 11 Cases.

## The Auction

22.     The Debtors are authorized to conduct the Auction with respect to the Subject Assets.  The Auction shall take place on **September 22, 2016 at 10:00 a.m. (prevailing Eastern Time)** at the offices of counsel for the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, or such other place and time as the Debtors shall notify all Qualified Bidders, the Consultation Parties and each of their respective counsel and advisors.  The Debtors are authorized, subject to the terms of this Order, to take actions reasonably necessary, in the reasonable discretion of the Debtors in consultation with the Consultation Parties, to conduct and implement the Auction.

13

23.     Only the following parties shall be entitled to attend the Auction (such attendance to be in person): (i) the Debtors, (ii) the Consultation Parties, (iii) the Stalking Horse Bidder(s) (if any), (iv) any other Qualified Bidders, (v) any other party as the Debtors, in consultation with the Consultation Parties, may determine to include in their discretion, (vi) the representatives of, and advisors to, the United Steelworkers, and/or (vii) the representatives and advisors of the parties identified in clauses (i)-(v) above.  Only Qualified Bidders will be entitled to make any Overbids at the Auction.  The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed.

24.     Each Qualified Bidder participating in the Auction must confirm that it has (a) not engaged in any collusion with respect to the bidding or Sale of any of the Subject Assets, (b) reviewed, understands and accepts the Bidding Procedures, (c) consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties and (d) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

## Assumption and Assignment Procedures

25.     The Assumption and Assignment Procedures as set forth in the Motion are hereby approved and made part of this Order as if fully set forth herein.  The Assumption and Assignment Procedures are appropriate and fair to all non-Debtor counterparties and comply in all respects with the Bankruptcy Code.

26.     The decision to assume and assign the applicable assumed and assigned contracts and/or leases to the Successful Bidder(s) is subject to Court approval and the consummation of a Sale of the Subject Assets.  Accordingly, absent closing of such Sale, the

applicable assumed and assigned contracts and/or leases shall not be deemed assumed and/or assigned and shall, in all respects, be subject to further administration under the Bankruptcy Code.

        *a.*     ***Cure Notice***

        27.     The Cure Notice, substantially in the form attached hereto as <u>Exhibit C</u>, is (i) reasonably calculated to provide sufficient effective notice to all non-Debtor counterparties to contracts or leases that may be assumed or assigned and any other affected parties of the Debtors' intent to assume and assign some or all of such contracts or leases and to afford the non-Debtor counterparty to each such contract or lease the opportunity to exercise any rights affected by the Motion pursuant to Bankruptcy Rules 2002, 6004 and 6006, and (ii) hereby approved.

        28.     The inclusion of a contract on a Cure Notice shall not constitute or be deemed a determination or admission by the Debtors, the Stalking Horse Bidder (if any), any Successful Bidder or any other party in interest that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that such contract or lease will be assumed in connection with the Sale of the Subject Assets. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts or leases listed on the Cure Notice.

        29.     Within fifteen (15) Business Days after the entry of this Order, or as soon thereafter as is practicable (the "<u>Assumption and Assignment Service Date</u>"), the Debtors will file with this Court and serve on each counterparty to an executory contract or unexpired lease related to the Subject Assets (the "<u>Designated Contracts</u>") the Cure Notice which shall: (i) state the cure amounts, if any, that the Debtors believe are necessary to assume such contracts or leases pursuant to Bankruptcy Code section 365 (the "<u>Cure Amount</u>"); (ii) notify the non-Debtor

counterparty that such party's contract(s) or lease(s) may be assumed and assigned to the Successful Bidder of one or more of the Subject Assets at the conclusion of the Auction; (iii) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtors; and (iv) state the deadline by which the non-Debtor counterparty shall file an objection to the Cure Amount(s) or to the assumption and assignment of the applicable contract(s) and/or lease(s).  Copies of Cure Notices shall promptly be provided to the Committee.

30.     Any objection to the Cure Amount or the assumption and assignment of the applicable contract(s) and/or lease(s) (the "Cure Objection") must be filed with the Court and served on the Notice Parties so as to be received no later than fourteen (14) days after the Assumption and Assignment Service Date (the "Cure Objection Deadline").  Any Cure Objection must also state (i) the basis for such objection and (ii) with specificity what Cure Amount(s) the non-Debtor counterparty to the relevant executory contract(s) or unexpired lease(s) believes is required (in all cases with appropriate documentation in support thereof).

31.     Any objection solely to the Cure Amount(s) may not prevent or delay the Debtors' assumption and assignment of assumed and assigned contract(s) or lease(s).  If a party objects solely to Cure Amount(s), the Debtors may, with the consent of the relevant Successful Bidder, hold the claimed Cure Amount(s) in reserve pending further order of the Court or mutual agreement of the parties.  So long as the Cure Amount(s) are held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable assumed and assigned contract(s) or lease(s), the Debtors can, without further delay, assume and assign such contract(s) or lease(s).  Under such circumstances, the objecting non-Debtor counterparty's recourse is limited to the funds held in reserve.

16

32.    The Debtors reserve the right, and are authorized but not directed, to (i) supplement the Designated Contracts list with previously omitted Designated Contracts in accordance with the definitive agreement for the Sale or (ii) remove a Designated Contract from the list of contracts that a Successful Bidder proposes be assumed and assigned to it in connection with the Sale.  In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly (i) file with this Court a notice setting forth each such addition or removal (the "Supplemental Designated Contracts List") and (ii) serve a supplemental notice of assumption and assignment (a "Supplemental Notice of Assumption and Assignment") by electronic transmission, hand delivery, or overnight mail on the counterparty (and its attorney, if known) to each impacted Designated Contract at the last known address available to the Debtors. A copy of the Supplemental Designated Contract List shall be promptly provided to the Committee.  To the extent that a previously omitted Designated Contract is added to the Designated Contracts list (an "Additional Designated Contract"), the Debtors shall, in the Supplemental Designated Contracts List and each Supplemental Notice of Assumption and Assignment: (i) state the Cure Amount for such Additional Designated Contract; (ii) notify the non-Debtor counterparty that such party's contract(s) or lease(s) may be assumed and assigned to the Successful Bidder of one or more of the Subject Assets at the conclusion of the Auction; (iii) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtors or the Court; and (iv) state the deadline by which the non-Debtor counterparty shall file an objection to the Cure Amount(s) or to the assumption and assignment of the applicable contract(s) and/or lease(s).  Any objection to the Cure Amount or the assumption and assignment of Additional Designated Contracts must be filed with the Court and served on the Notice Parties

so as to be received no later than fourteen (14) days from the date that the Supplemental Notice

of Assumption and Assignment is served on the Non-Debtor Counterparty (or such other date

authorized by the Court as shall be specified in the Supplemental Notice of Assumption and

Assignment) (the "Additional Cure Objection Deadline").  Other than meeting the Additional

Cure Objection Deadline, Cure Objections relating to a Supplemental Notice of Assumption and

Assignment shall meet all requirements of a Cure Objection set forth herein.

33.     If no objection to the Cure Amount(s) is timely received, the Cure

Amount(s) set forth in the Cure Notice shall be controlling notwithstanding anything to the

contrary in any assigned contract(s) or lease(s) or other document(s) as of the date of the Cure

Notice.

**b.      *Designation of Contracts/Leases and Adequate Assurance of Future Performance***

34.     Except as otherwise provided in the Sale Order or the final Purchase

Agreement, only those Designated Contracts that are included on a schedule of assumed and

assigned contracts attached to the final Purchase Agreement with the Successful Bidder(s) will

be assumed and assigned to the Successful Bidder.

35.     To the extent that any non-Debtor counterparty wishes to object to the

adequate assurance of future performance by the Stalking Horse Purchaser or another Qualified

Bidder under the applicable executory contract(s) or unexpired lease(s), then such non-Debtor

counterparty shall file a written objection with the Court and serve on the Notice Parties and the

applicable Qualified Bidder(s) so that such objection is received on or before **12:00 p.m.**

**(prevailing Central Time)** one (1) day prior to the Sale Hearing.

36.     To the extent that any non-Debtor counterparty does not timely file and

serve an objection as set forth above, such counterparty will be:  (i) deemed to have consented to

the Cure Amount(s), if any, set forth in the Cure Notice; (ii) barred, estopped and enjoined from asserting any additional Cure Amount(s) under the assumed and assigned executory contract(s) or unexpired lease(s); (iii) barred from objecting to the assumption and assignment of the applicable assumed and assigned executory contract(s) or unexpired lease(s) to the Successful Bidder(s), and (iv) barred from objecting to adequate assurance of future performance by the Successful Bidder(s).

<u>**Related Relief**</u>

37.    The Debtors are hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established by this Order.

38.    This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

39.    The Debtors are not required to comply with any state or local bulk transfer laws or requirements in connection with the Sale.

40.    This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the Debtors' estates.

41.    To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

42.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

43.     No later than two business days after the date of entry of this Order, the Debtors shall serve a copy of this Order and, no later than 24 hours after such service, the Debtors shall file a certificate of service with the Court.

DATED:  July 20, 2016
St. Louis, Missouri

cke

Barry S. Schermer
United States Bankruptcy Judge

**Order Prepared By:**
Alan W. Kornberg
Elizabeth McColm
Alexander Woolverton
Michael M. Turkel
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019

## **EXHIBIT A**

## **BIDDING PROCEDURES**

## NORANDA ALUMINUM, INC.
## UPSTREAM BUSINESS BIDDING PROCEDURES[1]

### Introduction

Noranda Aluminum, Inc. and certain of its affiliates and subsidiaries (collectively, the "Debtors") are debtors and debtors in possession in chapter 11 cases (jointly administered under Case No. 16-10083-399) (the "Cases") pending in the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court").

By the Sale Motion, the Debtors sought approval of, among other things, the procedures (the "Bidding Procedures") by which they will solicit and select the highest or otherwise best offer(s) for the sale(s) of all, or substantially all, of the assets comprising the Debtors' primary aluminum production business (the "Upstream Business") owned and operated by Noranda Aluminum, Inc., Noranda Bauxite Ltd. and Noranda Alumina LLC (the "Subject Assets") or one or more categories of the Subject Assets (each a "Lot" and collectively, the "Lots"), which Lots are identified in **Exhibit 1** hereto, either through a sale to one Successful Bidder (as defined below) or multiple sales to multiple Successful Bidders.[2]  On July 20, 2016, the Bankruptcy Court entered an order (the "Bidding Procedures Order") which approved the Bidding Procedures set forth below.  Prior to entry of the Bidding Procedures Order, the Debtors filed a form of asset purchase agreement for the sale of all or substantially all of the Subject Assets or one or more of the Lots (together with certain ancillary agreements related thereto, the "Purchase Agreement"), which has also been made available on the Debtors' Case Website at *https://cases.primeclerk.com/noranda.*

### Key Dates

These Bidding Procedures provide interested parties with the opportunity to complete diligence, to submit competing bids for all or substantially all of the Subject Assets or one or more (or any combination thereof) of the Lots, and to participate in an auction to be conducted by the Debtors (the "Auction").

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Motion for (I) an Order Establishing Bidding Procedures for the Upstream Business and Granting Related Relief and (II) an Order Approving the Sale of the Upstream Business* (the "Sale Motion").

[2]    The Debtors reserve the right to further sub-divide the Lots.

The key dates for the sale process are as follows:[3]

| September 15, 2016 at 5:00 p.m. (prevailing Eastern Time) | Bid Deadline |
|---|---|
| September 22, 2016 at 10:00 a.m. (prevailing Eastern Time) | Auction, which will be held at Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 |
| September 27, 2016 at 2:00 p.m. (prevailing Central Time) | Sale Hearing |

## Access to Debtors' Diligence Materials

To receive access to due diligence materials and to participate in the bidding process, an interested party must submit to the Debtors or already be bound by (i) an executed confidentiality agreement in form and substance satisfactory to the Debtors (which, for the avoidance of doubt, may be substantially in the form attached hereto as **Exhibit 2**), (ii) evidence demonstrating the party's financial ability to consummate a sale transaction for all or substantially all of the Subject Assets or one or more (or any combination thereof) of the Lots (each, a "Sale Transaction") and (iii) a statement that such party has a bona fide interest in purchasing all or substantially all of the Subject Assets or one or more of the Lots.

A party who either (1) in the Debtors' reasonable discretion satisfies the requirements set forth in the immediately preceding sentence for receiving access to diligence materials or (2) is a DIP Credit Party[4] or a Pre-Petition Credit Party[5] (collectively, the "Credit Parties"), in either case, to the extent such party is subject to confidentiality restrictions reasonably acceptable to the Debtors, shall be a "Diligence Party." As promptly as practicable after the Debtors determine that a party is a Diligence Party, the Debtors will deliver to the Diligence Party access to the Debtors' confidential electronic data room. The Debtors will afford any Diligence Party the time and opportunity to conduct reasonable due diligence before the Bid Deadline (as defined below). Notwithstanding the foregoing, the Debtors reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Diligence Party who the Debtors determine, in consultation with the Consultation Parties, is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Diligence Party; *provided*, *however*, that contemporaneously with the Debtors providing access to any Diligence Party of any offering memoranda or management presentations or materials, the Debtors will post such memoranda, presentations and/or materials on websites for the DIP Credit Parties, Pre-Petition Credit Parties and the Committee, and any of

---

[3]   Such dates are subject to change as provided herein.

[4]   As defined in the *Final Order Granting Debtors' Motion to (i) Authorize Debtors in Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, 364; (ii) Grant Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §§ 364 and 507, (iii) Provide Adequate Protection to Pre-Petition Credit Parties, (iv) Modify Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507, and (v) Grant Related Relief* [Docket No. 392] (the "DIP Order").

[5]   As defined in the DIP Order.

such DIP Credit Parties, Pre-Petition Credit Parties, and the Committee may access such memoranda, presentations or materials subject to the confidentiality provisions in the applicable credit agreements or other confidentiality provisions reasonably acceptable to the Debtors; *provided*, *further* that such memoranda, presentations and/or materials shall only be shared on a confidential basis with the Committee and the holders of the outstanding obligations under the applicable credit agreements (notwithstanding anything in the applicable credit agreements to the contrary) and their respective counsel and other advisors in a confidential relationship with them.

All due diligence requests must be directed to Kerry Greer of PJT Partners LP at Greer@pjtpartners.com.

Each Diligence Party and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction. Failure by a Diligence Party to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties or Bid Consultation Parties, as applicable (each as defined below), that such bidder is not a Qualified Bidder. The Debtors reserve the right, in their reasonable discretion, in consultation with the Consultation Parties or Bid Consultation Parties, as applicable, to permit a Diligence Party or Qualified Bidder to remedy any such failure to comply.

## Indications of Interest

The Debtors reserve the right at any time to require Diligence Parties (other than the Credit Parties) to submit written indications of interest specifying, among other things, the Subject Assets or Lots to be purchased, the amount and type of consideration to be offered, and any other material terms. All such written indications of interest will be provided by the Debtors to the Consultation Parties on a confidential basis. A Diligence Party that fails to comply with any such request by the Debtors, in the Debtors' discretion and in consultation with the Consultation Parties or Bid Consultation Parties, as applicable, may not be provided further diligence access or be permitted to participate further in the auction process. The Debtors also reserve the right to exclude any Diligence Party (prior to its submission of a Qualified Bid) from continuing in the auction process if the Debtors determine, in consultation with the Bid Consultation Parties (as defined below), that the consideration proposed to be paid by such Diligence Party is insufficient.

## Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "Bid") for all or substantially all of the Subject Assets or one or more of the Lots, and each party submitting such a Bid (each, a "Bidder"), must satisfy each of the conditions set forth below, as determined by the Debtors after consultation with the Bid Consultation Parties. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

(a)    Good Faith Deposit: Each Bid must be accompanied by a deposit (a "Good Faith Deposit") submitted by wire transfer of immediately available funds to an interest-bearing escrow account to be identified and established by the Debtors.

Each Good Faith Deposit must equal the amount of ten percent (10%) of the purchase price contained in the Modified Purchase Agreement (as defined below) or such other amount as the Debtors determine, in consultation with the Consultation Parties or Bid Consultation Parties, as applicable; *provided*, *however*, that any party submitting a Bid that includes a credit bid for a substantial portion of the purchase price pursuant to section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit. The Debtors may, in their discretion, accept a letter of credit in lieu of a cash deposit.

(b)    <u>Same or Better Terms</u>:  To the extent a Stalking Horse Bidder is selected for all or substantially all of the Subject Assets or one or more of the Lots and approved by the Bankruptcy Court, each subsequent Bid must be on terms that, in the Debtors' business judgment, in consultation with the Bid Consultation Parties, are the same or better than the terms of the Stalking Horse Agreement.

(c)    <u>Executed Agreement</u>:  Each Bid must be based on the Purchase Agreement and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (the "<u>Modified Purchase Agreement</u>").  A Bid shall also include a copy of the Purchase Agreement marked against the Modified Purchase Agreement to show all changes requested by the Bidder (including those related to purchase price).

(d)    <u>Designation of Assigned Contracts and Leases, Payment of Cure Amounts</u>:  A Bid must identify those executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it at closing and provide for the payment of all cure amounts payable with respect to such contracts and leases under the Bankruptcy Code; *provided* that the Modified Purchase Agreement may allow for the Bidder to identify additional contracts prior to the closing or at such other date as agreed by the Debtors.

(e)    <u>Corporate Authority</u>:  A Bid must include written evidence reasonably acceptable to the Debtors, in consultation with the Consultation Parties, demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction, *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors, in consultation with the Consultation Parties, of the approval of the Sale Transaction by the equity holder(s) of such Bidder.

(f)    <u>Disclosure of Identity of Bidder</u>:  A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Subject Assets or otherwise participating in connection with such Bid (including any equity holder or other financial backer if the Bidder is an entity specifically formed for the purpose of effectuating the Sale Transaction), and the complete terms of any such participation, including any binding agreements, arrangements, or understandings

concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

(g)    <u>Pension Obligations</u>:  A Bid must state whether or not the Bidder intends to assume sponsorship of all or any part of, or any of the potential liabilities associated with the Noranda Aluminum Group Retirement Plan, and/or the Noranda Alumina LLC Hourly Pension Plan, and/or the Retirement Plan for Hourly Rated Employees of Noranda Aluminum Inc. and/or any other pension or benefit plans (collectively, the "<u>Pension Obligations</u>").

(h)    <u>Proof of Financial Ability to Perform</u>:  A Bid must include written evidence that the Debtors reasonably conclude, in consultation with their advisors and the Bid Consultation Parties, demonstrates that the Bidder has the necessary financial ability to (i) close the Sale Transaction and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Sale Transaction.  Such information must include, *inter alia*, the following:

    (1)    contact names and numbers for verification of financing sources;

    (2)    evidence of the Bidder's internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid (including, if applicable, the Bidder's payment of cure amounts) or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the Sale Transaction;

    (3)    the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors, in consultation with the Bid Consultation Parties;

    (4)    a description of the Bidder's pro forma capital structure; and

    (5)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors, in consultation with the Bid Consultation Parties, demonstrating that such Bidder has the ability to close the Sale Transaction.

(i)    <u>Regulatory and Third Party Approvals</u>:  A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale Transaction, if any, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Modified Purchase Agreement, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible).

(j)    <u>Contingencies</u>:  Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

(k)    <u>Irrevocable</u>:  Each Bid must expressly provide that (1) the Bidder is prepared to consummate the transaction set forth in the Modified Purchase Agreement promptly following entry of the Sale Order(s) and satisfaction of the closing conditions (if any) set forth in the Modified Purchase Agreement, and (2) the offer reflected in such Bid shall remain open and irrevocable until the conclusion of the Auction, provided that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain open and irrevocable as provided under "Closing the Auction; Successful Bidder" and "Backup Bidder" below.

(l)    <u>Bid Deadline</u>:  Each Bid must be received by each of the following parties, in writing, on or before September 15, 2016, at 5:00 p.m. (prevailing Eastern Time) or such later date as may be designated by the Debtors in consultation with the Consultation Parties (the "Bid Deadline"): (1) the Debtors, Noranda Aluminum Inc., 801 Crescent Drive, Suite 600, Franklin, Tennessee 37067; Attn: Dale W. Boyles, CFO (dale.boyles@noralinc.com); Gail Lehman, General Counsel (gail.lehman@noralinc.com) and Robert Caruso, CRO (rcaruso@alvarezandmarsal.com); (2) counsel for the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attention: Elizabeth R. McColm (emccolm@paulweiss.com), Diane Meyers (dmeyers@paulweiss.com) and Sarah Harnett (sharnett@paulweiss.com) and Carmody MacDonald P.C., 120 S. Central Avenue, Suite 1800, St. Louis, Missouri 63105, Attention: Christopher J. Lawhorn (cjl@carmodymacdonald.com); (3) investment banker for the Debtors, PJT Partners LP, 280 Park Avenue, 20th Floor, New York, NY 10017, Attn: James H. Baird (baird@pjtpartners.com) and Kerry Greer (greer@pjtpartners.com); (4) counsel for the ABL DIP Agent, Parker Hudson Rainer & Dobbs LLP, 303 Peachtree St. NE, Suite 3600, Atlanta, Georgia 30308, Attention: C. Edward Dobbs (edobbs@phrd.com) and Lewis Rice LLC, 600 Washington Ave., Suite 2500, St. Louis, Missouri 63101, Attention: Larry E. Parres (lparres@lewisrice.com); (5) counsel for the Term DIP Agent and Pre-Petition Term Agent, Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, IL, 60614, Attn: Michael D. Messersmith (michael.messersmith@kayescholer.com) and Seth J. Kleinman (seth.kleinman@kayesholer.com) and Thompson Coburn LLP, One US Bank Plaza, St. Louis, MO 63101, Attn: Mark V. Bossi (mbossi@thompsoncoburn.com); (6) counsel for the Term DIP Lenders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matt Barr (matt.barr@weil.com) and Robert J. Lemons (robert.lemons@weil.com) and Husch Blackwell LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105, Attn: Marshall C. Turner (marshall.turner@huschblackwell.com); (7) counsel for the Official Committee of Unsecured Creditors (the "Committee"), Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Jeffrey D. Prol (JProl@Lowenstein.com) and Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106-2140, Attn: Lisa A. Epps (lepps@spencerfane.com); (8) financial advisor for the Committee, Houlihan Lokey, Inc., 245 Park Avenue, 20th Floor, New York, NY 10167, Attn: Bradley

Jordan (bjordan@hlhz.com); and (9) to the Pension Benefit Guaranty Corporation, 1200 K Street, N.W., Suite 340, Washington, DC 20005, Attn: Michael Baird (baird.michael@pbgc.gov), but only if such Bid includes the assumption of any liabilities associated with the Pension Obligations.

A Bid received from a Bidder on or before the Bid Deadline that meets the requirements set forth above shall constitute a "Qualified Bid" for (a) all or substantially all of the Subject Assets and/or (b) specifically identified Lots, or combinations of Lots, and such Bidder shall constitute a "Qualified Bidder" for such Subject Assets and/or Lots. Notwithstanding anything else contained herein, the Credit Parties shall have the right by the Bid Deadline, subject in all respects to the Bankruptcy Code, other applicable law, and the right of the Committee to object as set forth in the DIP Order, to credit bid all or any portion of the aggregate amount of their applicable outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code, the DIP Order or other applicable law, and any such credit bid shall be subject to the requirements set forth above under the heading "Auction Qualification Process." Nothing herein shall relieve a DIP Credit Party or Pre-Petition Credit Party from its obligations under the Intercreditor Agreement.[6] Nothing herein shall waive or otherwise impede the Committee's rights with respect to any such credit bid as set forth in the DIP Order, including paragraph 14(e) thereof.

To the extent a Qualified Bid provides for assumption of the Pension Obligations, the Debtors shall request that such Bidder provide forthwith to PBGC the financial information regarding such Bidder on a confidential basis so the PBGC can assess whether it has financial ability to assume the Pension Obligations, and the Debtors shall forward any such financial information on a confidential basis to the PBGC within two (2) business days of receipt.

### Stalking Horse Bids

Subject to the provisions set forth herein and in consultation with the Consultation Parties, the Debtors reserve the right, at any time before August 8, 2016 (or such later date as the Debtors determine in their reasonable discretion in consultation with the Consultation Parties), to enter into one or more purchase agreement(s) (each a "Stalking Horse Agreement"), subject to higher or otherwise better offers at the Auction, with any Qualified Bidder that submits a Qualified Bid (the "Stalking Horse Bidder") acceptable to the Debtors, in consultation with the Consultation Parties, to establish a minimum Qualified Bid for all or substantially all of the Subject Assets or for any applicable Lot at the Auction. The Stalking Horse Agreement may contain certain customary terms and conditions, including expense reimbursement and a break-up fee in favor of the Stalking Horse Bidder (the "Bid Protections") in amounts to be determined by the Debtors in consultation with the Consultation Parties. To the extent the Debtors enter into any Stalking Horse Agreement(s), the Debtors shall seek expedited approval of their entry into such agreement and any Bid Protections included therein together with the terms and conditions under which such Bid Protections would be payable to the Stalking Horse Bidder, on no less than seven (7) days' notice (the "Stalking Horse Hearing"). The Debtors shall serve notice of the Stalking Horse Agreement and the Stalking Horse Hearing on all parties on the Debtors' Rule 2002 Notice List and as otherwise required by the Bidding Procedures Order (each, a "Stalking

---

[6]    As defined in the DIP Order.

Horse Notice"). Each Stalking Horse Notice will include (i) the identity of the proposed Stalking Horse Bidder, (ii) a summary of the key terms of the Stalking Horse Agreement specifying, among other things, the Subject Assets proposed to be acquired, the amount and type consideration to be offered, and any other material terms, (iii) a summary of the type and amount of Bid Protections, if any, proposed to be afforded to the Stalking Horse Bidder, and (iv) a copy of the Stalking Horse Agreement. At least five (5) days prior to the Auction, the Debtors shall distribute copies of the Stalking Horse Agreement(s) to each of the other Qualified Bidders. Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, all parties in interest with standing, including, but not limited to, the Committee (subject to the terms of the DIP Order with respect to any credit bid by a DIP Credit Party or a Pre-Petition Credit Party), shall have the right, at any time before 4:00 p.m. (prevailing Central time) one day prior to the commencement of the Stalking Horse Hearing, to object to any of the terms set forth in the Stalking Horse Agreement, including, but not limited to, the designation of a Stalking Horse Bidder, the identity of the Stalking Horse Bidder, the provision of Bid Protections to such Stalking Horse Bidder and the terms and conditions under which such Bid Protections would be payable to the Stalking Horse Bidder, the Subject Assets proposed to be acquired, the amount and type consideration to be offered, and any other material terms.

Any Stalking Horse Agreement executed by the Debtors and approved by the Bankruptcy Court pursuant to the Stalking Horse Hearing and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtors will be deemed to be Qualified Bidder.

No party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections granted to a Stalking Horse Bidder which have been approved by the Bankruptcy Court. **Any substantial contribution claims under section 503(b) of the Bankruptcy Code or otherwise by any Bidder are deemed waived in connection with submitting a Bid.**

## Highest or Otherwise Best Bid

Whenever these Bidding Procedures refer to the highest or otherwise best Qualified Bid, such determination shall take into account any factors the Debtors, in consultation with the Bid Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the estates and may include, but are not limited to, the following (i) the amount and nature of the consideration, including any Assumed Liabilities (as defined in the Purchase Agreement or Modified Purchase Agreement, as applicable), including, for the avoidance of doubt, the assumption of the Pension Obligations; (ii) the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder; (iii) the extent to which such modifications are likely to delay closing of the sale of the relevant Subject Assets and the cost to the Debtors of such modifications or delay; (iv) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; (v) the net benefit to the Debtors' estates; and (vi) the proposed assumption of any liabilities associated with the Pension Obligations (collectively, the "Bid Assessment Criteria").

**Auction**

If two or more Qualified Bids for all or substantially all of the Subject Assets are received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest or otherwise best Qualified Bid.  Only Qualified Bidders may participate in the Auction.  If only one Qualified Bid is received with respect to all or substantially all of the Subject Assets (or with respect to any Lot), the Debtors may, after consultation with the Consultation Parties, designate such Qualified Bid as a Successful Bid(s) and not conduct the Auction.

**Procedures for Auction**

The Auction shall take place on September 22, 2016 at 10:00 a.m. (prevailing Eastern Time) at the offices of counsel for the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, or such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties.  The Auction shall be conducted according to the following procedures:

Only the following parties shall be entitled to attend the Auction (such attendance to be in person): (i) the Debtors, (ii) the Consultation Parties, (iii) the Stalking Horse Bidder(s) (if any), (iv) any other Qualified Bidders, (v) any other party as the Debtors, in consultation with the Consultation Parties, may determine to include in their discretion, (vi) the representatives of, and advisors to, the United Steelworkers, and/or (vii) the representatives and advisors of the parties identified in clauses (i)–(v) above.  Only Qualified Bidders will be entitled to make any Overbids (as defined below) at the Auction.

***The Debtors Shall Conduct the Auction.***

The Debtors and their advisors shall direct and preside over the Auction, which shall be transcribed.  Other than as expressly set forth herein, the Debtors (in consultation with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties) may conduct the Auction in the manner they determine will result in the highest or otherwise best offer for any of the Subject Assets.  The Debtors shall use their reasonable efforts to provide, at least one (1) business day prior to commencement of the Auction, the Consultation Parties and each Qualified Bidder participating in the Auction with a copy of the Modified Purchase Agreement associated with the highest or otherwise best Qualified Bid with respect to all or substantially all of the Subject Assets or any Lot(s), as applicable, for which such Qualified Bidder is bidding, as determined by the Debtors in consultation with the Bid Consultation Parties (such highest or otherwise best Qualified Bid for such assets, the "Auction Baseline Bid").  At the start of the Auction, the Debtors shall describe the material terms of the Auction Baseline Bid and each Qualified Bidder participating in the Auction must confirm that (a) it has not engaged in any collusion with respect to the bidding or sale of any of the Subject Assets described herein, (b) it has reviewed, understands, and accepts the Bidding Procedures, (c) it has consented to the core jurisdiction of the Bankruptcy Court (as described more fully below), and (d) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

***Credit Bidding by DIP Credit Parties and Pre-Petition Credit Parties.***

Notwithstanding anything else contained herein, the DIP Credit Parties and the Pre-Petition Credit Parties shall have the right (subject in all respects to (i) the Bankruptcy Code, (ii) other applicable law, and (iii) the Committee's rights with respect to any credit bid as set forth in the DIP Order, including paragraph 14(e) thereof), to credit bid all or any portion of the aggregate amount of their applicable outstanding secured obligations at the Auction pursuant to section 363(k) of the Bankruptcy Code, the DIP Order or other applicable law, in accordance with the applicable provisions of the applicable DIP Loan Agreements or Pre-Petition Documents, including the Intercreditor Agreement (each as defined in the DIP Order). Nothing herein shall relieve a Credit Party from its obligations under the Intercreditor Agreement. Nothing herein shall waive or otherwise impede the Committee's rights with respect to any credit bid as set forth in the DIP Order, including paragraph 14(e) thereof.

***Terms of Overbids.***

An "<u>Overbid</u>" is any bid made at the Auction, in accordance with the requirements set forth herein, subsequent to the Debtors' announcement of the respective Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)    <u>Minimum Overbid Increments</u>: The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Auction Baseline Bid by an incremental amount that is not less than the sum of (x) $100,000 (the "<u>Minimum Overbid Increment</u>") plus (y) in the event that the Debtors have entered into a Stalking Horse Agreement with respect to certain Subject Assets or Lots and such Stalking Horse Agreement has been approved by the Bankruptcy Court, the aggregate amount of any Bid Protections under such Stalking Horse Agreement, and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. The Debtors reserve the right, in consultation with the Bid Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid may include (i) cash and/or noncash consideration, *provided, however,* that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment in consultation with the Bid Consultation Parties, and (ii) in the case of a Bid by the DIP Credit Parties or the Pre-Petition Credit Parties, a credit bid of up to the full amount of the such secured creditors' applicable outstanding secured obligations, subject to the Committee's rights and limitation with respect to such credit bid as set forth in the DIP Order, including paragraph 14(e) thereof.

(b)    <u>Other Overbid Conditions</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description

of all changes requested by the Bidder to the Purchase Agreement or Modified Purchase Agreement, as the case may be, in connection therewith.  For the avoidance of doubt, any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these Bidding Procedures and the conditions for a Qualified Bid.

At the Debtors' discretion, to the extent not previously provided (which shall be determined by the Debtors in consultation with the Bid Consultation Parties), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors), as the Debtors, in their reasonable business judgment in consultation with the Bid Consultation Parties, may request, demonstrating such Bidder's ability to consummate the Sale Transaction proposed by such Overbid.

### Announcement and Consideration of Overbids.

(c)    <u>Announcement of Overbids</u>:  A Bidder submitting an Overbid at the Auction shall announce at the Auction the material terms of such Overbid, including the total amount and type of consideration offered in such Overbid.

(d)    <u>Consideration of Overbids</u>:  The Debtors reserve the right, in their reasonable business judgment in consultation with the Consultation Parties or Bid Consultation Parties, as applicable, to make one or more continuances of the Auction to, among other things:  facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment in consultation with the Bid Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount; *provided* that, to the extent the Debtors determine to request that any Qualified Bidder increase the amount of their Good Faith Deposit, the Debtors first shall consult with the Bid Consultation Parties before making such request.

### Additional Procedures.

The Debtors (in consultation with the Consultation Parties or Bid Consultation Parties, as applicable), in the exercise of their fiduciary duties for the purpose of maximizing value for their estates from the sale process, may modify the Bidding Procedures and implement additional procedural rules for conducting the Auction.  Specifically, among other things, the Debtors, in consultation with the Bid Consultation Parties, may determine to select more than one Successful Bid and more than one Successful Bidder (and/or more than one Backup Bid and more than one Backup Bidder).

***Consent to Jurisdiction as Condition to Bidding.***

All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, the Cases, the Bidding Procedures, the Purchase Agreement, any Modified Purchase Agreement, the Auction, or the construction and enforcement of documents relating to any Sale Transaction and waived any right to a jury trial in connection with any disputes relating to the Debtors, the Cases, the Bidding Procedures, the Purchase Agreement, any Modified Purchase Agreement, the Auction, or the construction and enforcement of documents relating to any Sale Transaction.

***Sale Is As Is/Where Is.***

Any of the Subject Assets sold pursuant to the Bidding Procedures shall be sold free and clear of all liens claims and encumbrances as permitted by section 363(f) of the Bankruptcy Code other than any Assumed Liabilities and conveyed at Closing in their then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**", except to the extent set forth in the definitive agreement for the Successful Bid, if applicable; *provided* that any such sale shall be subject to any Credit Party's or other party in interest's right to object to the extent otherwise set forth herein.

***Closing the Auction; Successful Bidder.***

The Auction shall continue until there is one Qualified Bid for substantially all of the Subject Assets (or a combination of Qualified Bids for one or more of the Lots), that the Debtors determine in their reasonable business judgment, in consultation with the Bid Consultation Parties, is the highest or otherwise best Qualified Bid at the Auction with respect thereto (each such Bid, the "Successful Bid," and the Bidder submitting such Successful Bid, the "Successful Bidder").  In making this decision, the Debtors shall consider the Bid Assessment Criteria.

The Auction shall close when the Successful Bidder(s) submits fully executed sale and transaction documents, as applicable, memorializing the terms of the Successful Bid(s).

Promptly following the Debtors' selection of the Successful Bid(s) and the conclusion of the Auction, the Debtors shall announce the Qualified Bid(s) and Successful Bidder(s) and shall file with the Bankruptcy Court notice of the Successful Bid(s) and Successful Bidder(s).  The Debtors' ability to consummate the transactions proposed by a Successful Bidder(s) shall be subject to approval by the Bankruptcy Court.  For the avoidance of doubt, a Consultation Party's participation in the Auction shall not waive such party's right to object to the transactions proposed by the Successful Bidder(s).

The Debtors shall not consider any Bids submitted after the conclusion of the Auction.  The Successful Bidder(s) shall be required to keep the Successful Bid(s) open and irrevocable until the closing of the transactions contemplated thereby.

*Backup Bidder.*

Notwithstanding anything in the Bidding Procedures to the contrary, the Qualified Bid for the Subject Assets or an applicable Lot(s) that the Debtors determine in their reasonable business judgment, in consultation with the Bid Consultation Parties, is the next highest or otherwise best Qualified Bid(s) at the Auction after the Successful Bid(s), will be designated as the "Backup Bid" with respect thereto and the Bidder submitting such Backup Bid, the "Backup Bidder." The Backup Bidder shall be required to keep the Backup Bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of entry of the Sale Order (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder (defined herein).

Following entry of the Sale Order, if the Successful Bidder fails to consummate the Successful Bid within sixty (60) days or such other period provided under the Purchase Agreement or Modified Purchase Agreement, as applicable, the Debtors may, in consultation with the Bid Consultation Parties, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case of a breach or failure to perform on the part of the Successful Bidder, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more non-interest bearing accounts by the Debtors, but shall not become property of the Debtors' estates; *provided*, *however*, that the Good Faith Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Debtors or credited towards the purchase price set forth in the Successful Bid, in either case as provided in these Bidding Procedures. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than seven (7) days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder not later than seven (7) business days after (i) the closing of the transaction with the Successful Bidder (defined herein) for the relevant Subject Assets and (ii) the Outside Backup Date; *provided, however*, that if the Back-up Bid becomes the Successful Bid as provided herein, any subsequent breach or failure to perform by the Back-up Bidder may result in the forfeit of the Good Faith Deposit of the Back-up Bidder to the Debtors. If the Successful Bidder consummates the Successful Bid, its Good Faith Deposit to the extent in cash shall be credited towards the purchase price set forth in the Successful Bid.

## The Consultation Parties

The Debtors shall consult with Cortland Capital Market Services LLC, as its capacities as agent under the Debtors' postpetition, superpriority, multiple-draw secured term loan facility (in such capacity, the "Term DIP Agent") and Pre-Petition Term Loan Agreement (as defined in the DIP Order) (in such capacity, the "Pre-Petition Term Agent"), Bank of America, N.A., as agent

under the Debtors' postpetition, superpriority, secured asset-based revolving credit facility (the "<u>ABL DIP Agent</u>"), Weil, Gotshal & Manges LLP, as counsel to certain DIP Credit Parties and Pre-Petition Credit Parties, and the advisors to the Committee (collectively, the "<u>Consultation Parties</u>" and each, a "<u>Consultation Party</u>") as explicitly provided for in these Bidding Procedures; *provided, however*, that, in certain circumstances as set forth in these Bidding Procedures, the Debtors shall consult only with the Bid Consultation Parties (as defined below). The "<u>Bid Consultation Parties</u>" shall be all Consultation Parties (and their advisors) other than any Consultation Party (and its advisors) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open. For the avoidance of doubt, the Debtors' obligation to consult with the Consultation Parties may, in the Debtors' discretion, be met by (i) consultation solely with the respective advisors to each of the Consultation Parties, as set forth in "Auction Qualification Process – Bid Deadline" above (collectively, the "<u>Consultation Party Advisors</u>"); or (ii) consultation with each of the Consultation Parties and their Consultation Party Advisors at the same time or in separate communications.

## <u>Reservation of Rights of the Debtors</u>

Except as otherwise provided in the Purchase Agreement, these Bidding Procedures or the Bidding Procedures Order, the Debtors further reserve the right, in their reasonable business judgment in consultation with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties to: (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal for substantially all of the Subject Assets or for each of the Lot(s); (iv) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures, the requirements of the Bankruptcy Code or, if applicable, the Intercreditor Agreement, or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing in open court, or by filing a notice on the docket of the Cases, without further notice; (ix) include any other party as a Consultation Party and attendee at the Auction; and (x) modify the Bidding Procedures and implement additional procedural rules that the Debtors determine, in their business judgment will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties; *provided*, *however*, that any modification or additions to the Bidding Procedures shall not be inconsistent with the Bidding Procedures Order or any other Order of the Bankruptcy Court, unless otherwise ordered by the Bankruptcy Court.

## **Exhibit 1**

Lots

| Lot Number | Assets | General Description |
|---|---|---|
| 1. | Gramercy Assets | Alumina refinery in Gramercy, Louisiana (the "Gramercy Facility") owned and operated by Noranda Alumina LLC ("Noranda Alumina") together with any assets, real property, personal property, plants, equipment, inventory, and accounts receivable associated therewith. |
| 2. | New Madrid Assets | Primary aluminum reduction plant and fabrication facilities, located in New Madrid, Missouri, owned by Noranda Aluminum, Inc. ("NAI") together with any assets, real property, personal property, plants, equipment, inventory, and accounts receivable associated therewith, including but not limited to:<br><br>(A) The primary aluminum casthouse facility consisting of sow, billet and foundry production equipment, including full overhead crane access, melt and holding furnaces, casting equipment, homogenizing furnaces, saws and packaging equipment; and<br><br>(B) Three drawn wire rod mills co-located on a separate portion of the site. Rod mills #1 and #2 have a combined operating capacity of approximately 155 million pounds per year. The new, rod mill #3 has an operating capacity of approximately 220 million pounds per year and is located is on a separate portion of the site subject to a lease with New Madrid County, as lessor. |
| 3. | St. Ann Assets | The Debtors' bauxite mining assets and interests located in Jamaica owned and operated by Noranda Bauxite Ltd. |

## **Exhibit 2**

Confidentiality Agreement

**NORANDA ALUMINUM HOLDING CORPORATION**
801 Crescent Centre Drive – Suite 600
Franklin, TN 37067

**[Name of Potential Bidder]** ("[_____]")
**[Address]**
Attention: [_____]

Ladies & Gentlemen:

   In connection with [_____]'s (the "<u>Recipient</u>") consideration of a possible sale transaction (a "<u>Transaction</u>") involving Noranda Aluminum Holding Corporation and its wholly owned subsidiaries, each a debtor and debtor-in-possession (collectively, the "<u>Company</u>"), the Company may, subject to the terms and conditions of this letter agreement (this "<u>Agreement</u>") and the Bidding Procedures Order (as defined below), make available to the Recipient certain Confidential Information (as defined below). By countersigning in the space below, the Recipient agrees as follows:

     1.  <u>Use of Confidential Information</u>.

   (a)  The Recipient will keep the Confidential Information strictly confidential and use the Confidential Information solely for the purpose of evaluating a Transaction and not for any other purpose, including in any way detrimental to the Company. The Recipient will treat the Confidential Information in all material respects in the same way that it treats its own non-public proprietary information, but in any event using no less than a reasonable degree of care. The Recipient may disclose the Confidential Information to its Representatives whom the Recipient reasonably determines need to know the information for the purpose of evaluating a Transaction; *provided*, that the Recipient will (a) inform such Representatives receiving the Confidential Information of the confidential nature thereof and cause them to comply with the provisions of this Agreement as if they were a party to this Agreement and had undertaken the same obligations as are undertaken by the Recipient and (b) be responsible and indemnify the Company for any actions taken (or omissions) by the Recipient's Representatives that would constitute a breach of the terms of this Agreement applicable to the Recipient's Representatives as if such Representative had been a party to this Agreement. Subject to the immediately following sentence, as used in this Agreement, "<u>Representatives</u>" means, with respect to any party hereto, such party's affiliates and its and their respective directors, officers, employees, advisors (including attorneys, accountants, investment bankers, financial advisors and specialist consultants) and debt financing sources (which you will identify to us upon request) of such party and such party's affiliates. Notwithstanding anything to the contrary contained herein, without the prior written consent of the Company, the Recipient agrees that neither the Recipient nor any of its Representatives will disclose any Confidential Information to any actual or potential equity financing sources, joint bidders or co-bidders.

Pg 41 of 59

The Recipient agrees that neither it nor any of its Representatives will, without the prior written consent of the Company, directly or indirectly, (i) disclose to any other person, other than its Representatives, (x) the fact that discussions or negotiations may take place, are taking place or have taken place concerning a Transaction or any of the terms or other facts relating thereto, including the status thereof, (y) the existence or the terms of this Agreement or (z) the fact that any party or its Representatives has received or produced any Confidential Information or (ii) make any public statement concerning the Transaction (items (i) and (ii), collectively, "Transaction Information") in each case, other than pursuant to the terms and requirements of any order entered by the U.S. Bankruptcy Court for the Eastern District of Missouri in the Company's jointly administered chapter 11 cases (Case No. 16-10083) approving bidding procedures in connection with any Transaction (the "Bidding Procedures Order"); *provided, however*, that any party may disclose Transaction Information to the extent (1) required by, and subject to, Section 4 of this Agreement, (2) pursuant to and in accordance with the Bidding Procedures Order; or (3) it has received written advice from its outside counsel that it is required to make such disclosure in order to avoid violating the federal securities laws and, in the case of clauses (1) or (3), the requirement to make such disclosure does not arise from any breach of this Agreement by such party or its Representatives or as a result of unilateral actions by such party or its Representatives; and, *provided, further,* that, in the case of clause (3), to the extent legally permissible, the Recipient will and will cause its Representatives to give the Company reasonable advance notice of, and a copy of, such intended disclosure, will limit such disclosure to that which is legally required, and will consider, in good faith, including any comments or modifications proposed by the other party concerning the nature and scope of such intended disclosure.

2. <u>Definition of Confidential Information</u>.  For purposes of this agreement, the term "Confidential Information" includes (a) all information, whether in oral, visual, written, electronic or other form, concerning the Company and/or its subsidiaries (whether prepared by the Company or its agents or other Representatives, irrespective of the form of communication and when such communication was made, and whether or not marked as confidential) that is or has been furnished to the Recipient by or on behalf of the Company and (b) all notes, memoranda, analyses, reports, forecasts, data, compilations, studies, interpretations, summaries or other documents that are prepared by the Recipient or any of its Representatives that contain, reflect or are based on, in whole or in part, any of the foregoing ("Derived Confidential Information"), *provided, however*, that the term "Confidential Information" does not include information that:

(a)     is or becomes generally available to the public other than as a result of a breach of this agreement by the Recipient or its Representatives;

(b)     was within the Recipient's or its Representatives' possession before it was furnished to the Recipient by or on behalf of the Company, if the source of the information was not bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of confidentiality to, the Company or any other party with respect to that information;

(c)     is or becomes available to the Recipient or its Representatives on a non-confidential basis from a source other than the Company, if the source of the

information was not bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of confidentiality to, the Company or any other party with respect to that information; or

(d)     is independently developed by the Recipient or its Representatives without use of information disclosed by or on behalf of the Company or in breach of this Agreement.

3.    <u>Termination of Discussions</u>.  Other than as may be required in the Bidding Procedures Order, the Company will not be under any contractual or legal obligation of any kind whatsoever to furnish Transaction Information or Confidential Information to the Recipient and reserves the right, in its sole discretion, to terminate providing Transaction Information or Confidential Information at any time.  Upon the request of the Company for any or no reason, or, if the Recipient decides not to proceed with the Transaction, the Recipient will promptly inform the Company of that decision, and the Recipient will, and will cause its Representatives to, promptly deliver to the Company or destroy all Transaction Information and Confidential Information, including all Derived Confidential Information (and all copies thereof and extracts therefrom).  Compliance with the preceding sentence will be certified in writing to the Company by an authorized officer of the Recipient within five (5) business days of the delivery of the notice by the Company.  Notwithstanding the foregoing, the Recipient and its Representatives may retain copies of the Confidential Information (in electronic or paper form) (i) contained in an automatic archived computer system backup to the extent such copies are not readily available to end users and cannot readily be expunged from such computer system backup (i.e., if doing so would entail more than a *de minimis* level of effort) or (ii) to the extent that such retention is required to demonstrate compliance with applicable law, rule, regulation or professional standards, or to comply with the Recipient's bona fide document retention policy; *provided*, *however*, that any such information so retained shall be held in compliance with the terms of this Agreement for so long as such Confidential Information is retained and notwithstanding the termination of this Agreement.  Any and all duties and obligations existing under this Agreement shall remain in full force and effect, notwithstanding the delivery or destruction of the Transaction Information and Confidential Information required by this Section 3.

4.    <u>Requested or Required Disclosure</u>.  If the Recipient or any of its Representatives is requested or required by judicial, regulatory, governmental, administrative or other similar legal proceeding or process (by oral questions, interrogatories, requests for information or documents in a legal proceeding, subpoena, civil investigation, demand or other similar process) to disclose any of the Transaction Information or Confidential Information, the Recipient will and will cause its Representatives to provide the Company to the extent permitted by applicable law, rule or regulation with prompt written notice of the existence, terms and circumstances surrounding such request or requirement so that the Company may seek an appropriate protective order and/or, in its sole discretion, waive in writing compliance by the Recipient and/or its Representatives with the applicable provisions of this Agreement. If, and to the extent, in the absence of a protective order or the receipt of a waiver from the Company after a request in writing therefor is made by the Recipient (such request to be made as soon as practicable to allow the Company a reasonable amount of time to respond thereto), the Recipient or any of its Representatives or their respective affiliates are legally required as advised by counsel in writing to disclose Transaction Information or Confidential Information to any judicial, governmental,

regulatory, administrative or other similar entity, the Recipient or any of its Representatives or their respective affiliates will limit such disclosure to that which is legally required and, to the extent available, will use commercially reasonable efforts to obtain confidential treatment of such disclosure, and thereafter may disclose such information without liability hereunder. In no event will the Recipient or any of its Representatives oppose action by the Company to obtain a protective order or other relief to prevent the disclosure of the Transaction Information or Confidential Information or to obtain reliable assurance that confidential treatment will be afforded the Transaction Information or Confidential Information and, if the Company seeks such an order or other relief, the Recipient agrees to, and shall cause its Representatives to, cooperate as the Company shall reasonably request at the Company's expense.

5.    <u>Securities Laws</u>.  The Recipient hereby (a) acknowledges that it is aware (and that its agents or other Representatives who are apprised of the matters contemplated hereby have been or will be advised) that federal and state laws prohibit persons with material non-public information about a company obtained directly or indirectly from that company from purchasing or selling debt or equity securities (including derivative securities) of such company, or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person may purchase or sell such securities, and (b) agrees not to purchase or offer to purchase any securities of the Company while in the possession of any such information.

6.    <u>Certain Additional Covenants</u>.

(a)  *Standstill*.  As of the date of this Agreement, except as previously disclosed to the Company in writing, the Recipient represents that neither it nor any of its affiliates directly or beneficially owns, (i) any of the Company's or its subsidiaries' debt (including any interest in any term loans or revolving credit loans to the Company) or equity securities, (ii) any direct or indirect options, contract or other rights (including, any puts, calls, swaps or other derivative securities) to acquire or dispose of any such securities or otherwise related to the trading price or market value of such securities, or (iii) any economic or voting interests associated with any such securities ((i)–(iii) collectively, the "<u>Company Securities</u>").

(b)  *Non-Solicitation.* The Recipient agrees that for a period of two years from the date of this Agreement, it will not, directly or indirectly, solicit for employment or hire any employee of the Company with whom the Recipient has had contact or who became known to the Recipient in connection with its consideration of the Transaction; *provided*, *however*, that the foregoing provision will not prevent the Recipient from employing any such person who contacts it on his or her own initiative without any direct or indirect solicitation by or encouragement from the Recipient or from hiring employees in connection with the consummation of a Transaction by the Recipient.

(c)  *Broker; Co-Bidders; Financing Lock-Ups*.  The Recipient hereby represents and warrants that it is not acting and will not act as a broker for or representative of any other person in connection with a Transaction or any other transaction with the Company or its affiliates and is considering a Transaction only for its own account and for the account of its affiliates. Unless disclosed and with the prior written consent of the Company, the Recipient will not act as a joint-bidder or co-bidder with any other person with respect to a Transaction or any other transaction

with the Company or its affiliates and will not enter into any discussions, negotiations, agreements or understandings, whether written or oral, with any other person (other than any of its Representatives in such capacity) regarding a Transaction or any other transaction with the Company or its affiliates other than the Company and its Representatives and the Recipient's Representatives as permitted hereunder.  The Recipient agrees not to, directly or indirectly, enter into any agreement, arrangement or any other understanding, whether written or oral, with any potential financing source or sources that may reasonably be expected to limit, restrict, restrain or otherwise impair, in any manner, directly or indirectly, the ability of such financing source or sources to provide financing or other assistance to any other party in any other possible transaction involving the Company or its affiliates.

7.    <u>Coordination of Contacts</u>.    The Recipient will agree, and will cause its Representatives to agree, that all (i) communications regarding the Transaction, (ii) requests for additional information, facility tours or management meetings, and (iii) discussions or questions regarding procedures with respect to the Transaction, will be first submitted or directed to the PJT Partners LP and not to the Company.

8.    <u>No Warranty or Accuracy; Transaction Agreement</u>.    The Recipient understands and agrees that neither the Company nor its affiliates or Representatives (a) makes any representations or warranties, express or implied, with respect to any of the Transaction Information or Confidential Information or (b) will assume any responsibility or have any liability, including in contract, tort or under federal or state securities laws, to the Recipient or its Representatives resulting from the selection or use of the Transaction Information or Confidential Information by the Recipient or its Representatives.  The Recipient further agrees that it is not entitled to rely on the accuracy or completeness of the Transaction Information or Confidential Information and that the Recipient will be entitled to rely solely on such representations and warranties as may be included in any Transaction Agreement (as defined below), if any, subject to such limitations and restrictions as may be contained therein.  The Recipient and the Company agree that no contract or agreement providing for a Transaction will be deemed to exist between the Recipient and the Company unless and until the Recipient and the Company execute and deliver a final definitive agreement relating thereto (a "<u>Transaction Agreement</u>"), if any, and the Recipient and the Company hereby waive, in advance, any claims (including breach of contract) in connection with a Transaction unless and until the Recipient and the Company execute and deliver a Transaction Agreement.  The Recipient further acknowledges and agrees that the Company reserves the right, in its sole discretion, to reject any and all proposals made by the Recipient or its Representatives with regard to a Transaction and to terminate discussions and negotiations with the Recipient at any time and for any reason (or no reason).  The Recipient further understands that the Company will be free to establish and change any process or procedure with respect to a Transaction as the Company in its sole discretion determines (including negotiating with any other interested party and entering into a final definitive agreement relating to a Transaction with any other party without prior notice to the Recipient or any other person).

9.    <u>Equitable Relief</u>.  It is further understood and agreed that money damage would not be a sufficient remedy for any breach of this Agreement, that the Transaction Information and Confidential Information is valuable and unique and that any disclosure thereof in breach of this Agreement will result in irreparable injury to the Company and that the Company will be

entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach, and the Recipient further agrees to waive any requirement for the security or posting of any bond in connection with such remedy.  Such remedy will not be the exclusive remedy for breach of this Agreement but will be in addition to all other remedies available at law or equity to a Company.  The Recipient agrees that it will not oppose the granting of such relief on the basis that the Company has an adequate remedy at law.  In addition, the Recipient agrees that if it is held by any court of competent jurisdiction to be in violation, breach or nonperformance of any of the terms of this Agreement, then it will pay all costs of the Company of such action or suit, including reasonable attorneys' fees.

10.     Termination.  Except as otherwise set forth in Section 3, this Agreement will be effective as of the date of this Agreement and will terminate without further action two (2) years after the date of this Agreement.  Such termination will not, however, affect the liability of any party for any prior breach of any provision hereof.

11.     Third Party Beneficiaries.  The Recipient agrees that, except for such parties or as contemplated by Section 15, nothing herein expressed or implied is intended to confer upon or give any rights or remedies to any other person under or by reason of this Agreement.

12.     Governing Law.  This Agreement will be governed by New York law, without giving effect to the principles of conflict of laws thereof.  Each party hereto consents to personal jurisdiction in New York and Missouri and voluntarily submits to the jurisdiction of any State of New York court, Federal court sitting in the State of New York, and the bankruptcy court of the Eastern District of Missouri, Southeastern Division, in any action or proceeding with respect to this Agreement and hereby waives unconditionally any objection to the laying of venue in such forum, including any claim of inconvenient forum, and neither party will bring any claim regarding this Agreement in any other court.  **ANY RIGHTS TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, ACTION OR PROCEEDING, DIRECTLY OR INDIRECTLY, ARISING OUT OF, OR RELATING TO, THIS AGREEMENT ARE EXPRESSLY AND IRREVOCABLY WAIVED BY THE RECIPIENT AND THE COMPANY.**

13.     Counterparts.  This Agreement may be executed in counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, will be deemed to constitute one and the same agreement.

14.     Certain Definitions.  In addition to the terms defined elsewhere herein, for purposes of this Agreement, (a) the term "affiliate" has the meaning set forth in Rule 12b-2 promulgated by the Securities and Exchange Commission under the Securities Exchange Act of 1934 and (b) the term "person" means any individual or legal entity, including any corporation, general or limited partnership, limited liability company, trust or other entity or company.  The term "including" and any variation thereof shall be deemed to be followed by the words "without limitation" except where the meaning clearly indicates otherwise.

15.     Miscellaneous.  This Agreement may be modified or waived only by a separate writing duly executed by both parties hereto expressly so modifying or waiving this Agreement.  This Agreement contains the entire agreement between the Company and the Recipient

concerning the subject matter hereof and supersedes all previous agreements, written or oral, to the extent relating to the exchange, disclosure or treatment of Transaction Information and Confidential Information contemplated hereby or any consideration, investigations, discussions or negotiations of a Transaction.  No failure or delay by any party or any of its respective Representatives in exercising any right, power or privilege under this Agreement will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise of any right, power or privilege under this Agreement.  If any provision of this Agreement is deemed to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Agreement will not in any way be affected or impaired thereby.  No party hereto may assign its rights or obligations under this Agreement to any person without the prior written consent of the other parties hereto, except that the Company may assign this Agreement to any affiliate or successor or acquirer (including assets) thereof without the Recipient's prior written consent.  This Agreement will be binding upon each party hereto and its respective successors and permitted assigns and will inure to the benefit of, and be enforceable by, each other party hereto and its respective successors and assigns.  The Company has retained PJT Partners LP, Alvarez & Marsal North America LLC, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Ernst & Young LLP financial, legal and accounting advisors, respectively, in connection with the possible Transaction.  By executing this Agreement, the Recipient irrevocably consents to, and waives all objections to any conflict of interest on the part of PJT Partners LP, Alvarez & Marsal North America LLC, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Ernst & Young LLP that may result from, such representation.

16.    <u>Privilege</u>. To the extent that any Confidential Information may include materials subject to the attorney-client privilege, work product doctrine or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the parties hereto understand and agree that they have a commonality of interest with respect to such matters and it is their desire, intention and mutual understanding that the sharing of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege.  All Confidential Information that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine.

[Remainder of page intentionally left blank]

If you are in agreement with the foregoing, please sign and return one copy of this Agreement, which thereupon will constitute our agreement with respect to its subject matter.

- Very truly yours,

NORANDA ALUMINUM HOLDING CORPORATION

By: _____
     Name:
     Title:

ACCEPTED AND AGREED
AS OF THE DATE BELOW:

RECIPIENT: [_____]

By: _____
     Name:
     Title:

Dated: _____, 2016

# **EXHIBIT B**

# **SALE NOTICE**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| In re: | Case No. 16-10083-399 |
| **NORANDA ALUMINUM, INC.,** *et al.*, | **Chapter 11** |
| Debtors. | **Jointly Administered** |

### NOTICE OF BIDDING PROCEDURES, AUCTION DATE, POTENTIAL STALKING HORSE HEARING AND SALE HEARING

**PLEASE TAKE NOTICE THAT:**

On February 8, 2016, Noranda Aluminum, Inc. (the "Company") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

On June 13, 2016, the Debtors filed their Motion (the "Motion") for (I) an Order Establishing Bidding Procedures for the Upstream Business and Granting Related Relief and (II) an Order Approving the Sale of the Upstream Business.[1] By the Motion, the Debtors seek to sell (the "Sale") all, or substantially all, of the assets comprising the Debtors' primary aluminum production business (the "Upstream Business") operated by Noranda Aluminum, Inc., Noranda Bauxite Ltd. and Noranda Alumina LLC (the "Subject Assets") or one or more categories of the Subject Assets (each a "Lot" and collectively, the "Lots"), which Lots are identified in an exhibit to the Bidding Procedures, and to assume and assign certain executory contracts and unexpired leases (the "Available Contracts") related to the Subject Assets to one or more Stalking Horse Bidder(s) (if any) and/or one or more Successful Bidder(s) at the Auction, as applicable.

On July 20, 2016, pursuant to the Motion, the Court entered an Order (the "Bidding Procedures Order") [Docket No. ___] approving auction and bidding procedures (the "Bidding Procedures") in connection with the proposed Sale of the Upstream Business. A copy of the Motion, the Bidding Procedures Order and the Bidding Procedures can be obtained free of charge on *https://cases.primeclerk.com/noranda*.

Pursuant to the Bidding Procedures Order, the Debtors are authorized to enter into one or more agreements (each a "Stalking Horse Agreement"), subject to higher or otherwise better offers at the Auction, with a Stalking Horse Bidder regarding a Sale Transaction. In the event the Debtors enter into a Stalking Horse Agreement, the Debtors will file and serve notice of the designation of the proposed Stalking Horse Bidder and the proposed Stalking Horse Agreement

---

[1]   Capitalized terms used herein but not otherwise defined in this notice (the "Notice") shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

{13963/00000/1802235.DOCX.}

on the entities on the Rule 2002 Notice List and as otherwise required by the Bidding Procedures Order **on no less than seven (7) days' notice of the Stalking Horse Hearing**.  In the event the Debtors enter into any Stalking Horse Agreement, the Debtors shall seek expedited approval of their entry into such agreement and any Bid Protections included therein together with the terms and conditions under which such Bid Protections would be payable to the Stalking Horse Bidder on no less than seven (7) days' notice of the Stalking Horse Hearing.

The Auction shall take place on **September 22, 2016, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, or such other place and time as the Debtors shall notify all Qualified Bidders and the Consultation Parties and each of their respective counsel and advisors. Any party that wishes to take part in this process and submit a bid for the Assets must submit its Bid in accordance with the Bidding Procedures by **September 15, 2016 at 5:00 p.m. (prevailing Eastern Time)**, subject to extension as provided in the Bidding Procedures (the "Bid Deadline"). **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

A hearing to approve the Sale (the "Sale Hearing") the Subject Assets to the Successful Bidder(s) at the Auction, free and clear of all liens, claims, interests, and encumbrances and the assumption and assignment of certain Available Contracts, will be held on **September 27, 2016 at 2:00 p.m. (prevailing Central Time)**, at the United States Bankruptcy Court for the Eastern District of Missouri, Southeastern Division, Thomas F. Eagleton United States Courthouse, 111 South Tenth Street, St. Louis, Missouri 63102, Courtroom 5 North, before the Honorable Barry S. Schermer.  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtors' Chapter 11 Cases.

Pursuant to the Bidding Procedures Order, any objections to the Sale ("Sale Objections") must be set forth in writing and must state with particularity the grounds for such objections or other statements of position.  Sale Objections must be filed with the Court and served on (a) counsel for the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attention: Elizabeth R. McColm (emccolm@paulweiss.com), Diane Meyers (dmeyers@paulweiss.com) and Sarah Harnett (sharnett@paulweiss.com) and Carmody MacDonald P.C., 120 S. Central Avenue, Suite 1800, St. Louis, Missouri 63105, Attention: Christopher J. Lawhorn (cjl@carmodymacdonald.com); (b) counsel for the ABL DIP Agent, Parker Hudson Rainer & Dobbs LLP, 303 Peachtree St. NE, Suite 3600, Atlanta, Georgia 30308, Attention: C. Edward Dobbs (edobbs@phrd.com) and Lewis Rice LLC, 600 Washington Ave., Suite 2500, St. Louis, Missouri 63101, Attention: Larry E. Parres (lparres@lewisrice.com); (c) counsel for the Term DIP Agent and Pre-Petition Term Agent, Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, IL, 60614, Michael D Messersmith (michael.messersmith@kayescholer.com) and Seth J. Kleinman (seth.kleinman@kayesholer.com) and Thompson Coburn LLP, One US Bank Plaza, St. Louis, MO 63101, Attn: Mark V. Bossi (mbossi@thompsoncoburn.com); (d) counsel for the Term DIP Lenders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matt Barr (matt.barr@weil.com) and Robert J. Lemons (robert.lemons@weil.com) and Husch Blackwell LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105, Attn: Marshall C. Turner

(marshall.turner@huschblackwell.com); (e) counsel for the Committee, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Jeffrey D. Prol (JProl@Lowenstein.com) and Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106-2140, Attn: Lisa A. Epps (lepps@spencerfane.com); and (f) the Office of the United States Trustee, 111 S. 10th St., Suite 6.353, St. Louis, Missouri 63102 by **5:00 p.m. (prevailing Central Time) on September 20, 2016**; provided that objections to the conduct of the Auction or selection of the Successful Bid(s) or Back-Up Bid(s) shall be in writing, filed with the Court, together with proof of service, and served so as to be received by the Notice Parties on or before **12:00 p.m. (prevailing Central Time) one (1) day prior to the commencement of the Sale Hearing**.  UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT AND THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.

　　　　This Notice is subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety.  In accordance with the Bidding Procedures, the Debtors, in the exercise of their business judgment, have reserved the right to postpone to a later date the sale-related dates set forth herein to achieve the maximum value for the Subject Assets.

Dated: _____, 2016         Respectfully submitted,
          St. Louis, Missouri

                                        CARMODY MACDONALD P.C.


                                        _____
                                        Christopher J. Lawhorn, # 45713MO
                                        Angela L. Drumm, #57678MO
                                        Colin M. Luoma, #65000MO
                                        120 S. Central Avenue, Suite 1800
                                        St. Louis, Missouri  63105
                                        Telephone:  (314) 854-8600
                                        Facsimile: (314) 854-8660
                                        cjl@carmodymacdonald.com
                                        ald@carmodymacdonald.com
                                        cml@carmodymacdonald.com

                                        Local Counsel to the Debtors and
                                        Debtors in Possession

                                        - and -

                                        PAUL, WEISS, RIFKIND, WHARTON &
                                        GARRISON LLP
                                        Alan W. Kornberg
                                        Elizabeth R. McColm
                                        Sarah Harnett
                                        1285 Avenue of the Americas
                                        New York, New York  10019
                                        Telephone:  (212) 373-3000
                                        Facsimile:  (212) 757-3990
                                        akornberg@paulweiss.com
                                        emccolm@paulweiss.com
                                        sharnett@paulweiss.com

                                        Counsel to the Debtors and
                                        Debtors in Possession

# **EXHIBIT C**

# **CURE NOTICE**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 16-10083-399 |
| **NORANDA ALUMINUM, INC.,** *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
AND PROPOSED CURE AMOUNTS**

YOU ARE RECEIVING THIS NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF THE DEBTORS' UPSTREAM BUSINESS AND THE PROPOSED CURE AMOUNT WITH RESPECT THERETO (THE "NOTICE OF ASSUMPTION AND ASSIGNMENT") BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH NORANDA ALUMINUM, INC., NORANDA BAUXITE LTD., NORANDA ALUMINA LLC OR ONE OR MORE OF ITS AFFILIATED DEBTORS (COLLECTIVELY, THE "DEBTORS"). PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.

**PLEASE BE ADVISED** that on June 13, 2016, Noranda Aluminum, Inc. and its affiliated debtors and debtors in possession in the above-captioned bankruptcy cases (collectively with the Company, the "Debtors") filed their Motion (the "Motion") for (I) an Order Establishing Bidding Procedures for the Upstream Business and Granting Related Relief and (II) an Order Approving the Sale of the Upstream Business.[1]  By the Motion, the Debtors seek to sell (the "Sale") all, or substantially all, of the assets comprising the Debtors' primary aluminum production business (the "Upstream Business") operated by Noranda Aluminum, Inc., Noranda Bauxite Ltd. and Noranda Alumina LLC (the "Subject Assets") or one or more categories of the Subject Assets (each a "Lot" and collectively, the "Lots"), which Lots are identified in an exhibit to the Bidding Procedures, and to assume and assign certain executory contracts and unexpired leases (the "Available Contracts") related to the Subject Assets to one or more Stalking Horse Bidder(s) (if any) and/or one or more Successful Bidder(s) at the Auction, as applicable.

**PLEASE BE FURTHER ADVISED** that, on July 20, 2016, pursuant to the Motion, the Court entered an Order (the "Bidding Procedures Order") [Docket No. __] approving auction and bidding procedures (the "Bidding Procedures") in connection with the proposed Sale.  A copy of

---

[1]   Capitalized terms used herein but not otherwise defined in this notice (the "Notice") shall have the meanings ascribed to them in the Motion.

the Motion, the Bidding Procedures Order and the Bidding Procedures can be obtained free of charge on *https://cases.primeclerk.com/noranda*.

      **PLEASE BE FURTHER ADVISED** that a hearing to approve the Sale (the "Sale Hearing"), including the assumption and assignment of certain Designated Contracts (as defined below), will be held on **September 27, 2016 at 2:00 p.m. (prevailing Central Time)**, at the United States Bankruptcy Court for the Eastern District of Missouri, Southeastern Division, Thomas F. Eagleton United States Courthouse, 111 South Tenth Street, St. Louis, Missouri 63102, Courtroom 5 North, before the Honorable Barry S. Schermer.  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtors' Chapter 11 Cases.

      **PLEASE BE FURTHER ADVISED** that the Bidding Procedures Order, among other things, established procedures for the assumption and assignment of certain executory contracts and unexpired leases that the Debtors believe they might seek to assume and assign in connection with the Sale of the Subject Assets (collectively, the "Designated Contracts") to a purchaser and the determination of related Cure Amount.  The Debtors are parties to numerous Designated Contracts and, in accordance with the Bidding Procedures Order, hereby file this notice identifying (i) the Designated Contracts, which may be assumed and assigned to any Stalking Horse Bidder, if any, or such other Successful Bidder in connection with the Sale of the Subject Assets and (ii) the proposed amounts, if any, the Debtors believe are owed to the counterparty to the Designated Contract to cure any defaults or arrears existing under the Designated Contract (the "Cure Amount"), both as set forth on Exhibit A attached hereto (the "Cure Schedule").[2]  Other than the Cure Amount listed on Exhibit A, the Debtors are not aware of any amounts due and owing under the Designated Contracts listed therein.

      **PLEASE BE FURTHER ADVISED** that the deadline to file an objection to the assumption and assignment of the Designated Contract(s) and the Cure Amount(s) for such Designated Contract(s) (together, "Cure Objections") is no later than **5:00 p.m. (prevailing Central time) fourteen (14) days following the date the Cure Notice is filed with the Court and served on the counterparty to the Designated Contracts** (the "Cure Objection Deadline").  Cure Objections, if any, must be filed with the Court and served upon (a) counsel for the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attention: Elizabeth R. McColm (emccolm@paulweiss.com), Diane Meyers (dmeyers@paulweiss.com) and Sarah Harnett (sharnett@paulweiss.com) and Carmody MacDonald P.C., 120 S. Central Avenue, Suite 1800, St. Louis, Missouri 63105, Attention: Christopher J. Lawhorn (cjl@carmodymacdonald.com); (b) counsel for the ABL DIP Agent, Parker Hudson Rainer & Dobbs LLP, 303 Peachtree St. NE, Suite 3600, Atlanta, Georgia 30308, Attention: C. Edward Dobbs (edobbs@phrd.com) and Lewis Rice LLC, 600 Washington Ave., Suite 2500, St. Louis, Missouri 63101, Attention: Larry E. Parres (lparres@lewisrice.com); (c) counsel for the Term DIP Agent and Pre-Petition Term Agent, Kaye Scholer LLP, 70 W.

---

[2]    The Debtors may modify the list of Designated Contracts that will be assumed and assigned in connection with the Sale.  In addition, the inclusion of any contract or agreement on Exhibit A shall not constitute an admission by the Debtors that any such Designated Contract is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code and the Debtors reserve all rights with respect thereto.

Madison Street, Suite 4200, Chicago, IL, 60614, Attn: Michael D Messersmith (michael.messersmith@kayescholer.com) and Seth J. Kleinman (seth.kleinman@kayesholer.com) and Thompson Coburn LLP, One US Bank Plaza, St. Louis, MO 63101, Attn: Mark V. Bossi (mbossi@thompsoncoburn.com); (d) counsel for the Term DIP Lenders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matt Barr (matt.barr@weil.com) and Robert J. Lemons (robert.lemons@weil.com) and Husch Blackwell LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105, Attn: Marshall C. Turner (marshall.turner@huschblackwell.com); (e) counsel for the Committee, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Jeffrey D. Prol (JProl@Lowenstein.com) and Spencer Fane LLP, 1000 Walnut, Suite 1400, Kansas City, MO 64106-2140, Attn: Lisa A. Epps (lepps@spencerfane.com) and (f) the Office of the United States Trustee, 111 S. 10th St., Suite 6.353, St. Louis, Missouri 63102 (collectively, the "Notice Parties").

     **PLEASE BE FURTHER ADVISED** that the Cure Objection must state (i) the basis for the objection and (ii) with specificity, what Cure Amount(s) the party to the Designated Contract(s) believes is required (in all cases with appropriate documentation in support thereof).

     **PLEASE BE FURTHER ADVISED** that any objection solely to the Cure Amount(s) may not prevent or delay the Debtors' assumption and assignment of the Designated Contract(s). If a non-Debtor counterparty (a "Non-Debtor Counterparty") objects solely to Cure Amount(s), the Debtors may, with the consent of the Successful Bidder(s), hold the claimed Cure Amount(s) in reserve pending further order of the Court or mutual agreement of the parties.  So long as Cure Amount(s) are held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable Designated Contract(s), the Debtors can, without further delay, assume and assign such Designated Contract(s) to the applicable Successful Bidder(s).  Under such circumstances, the objecting Non-Debtor Counterparty's recourse is limited to the funds held in reserve.

     **PLEASE BE FURTHER ADVISED** that although the Debtors have made a good faith effort to identify all Designated Contracts that might be assumed and assigned in connection with a Sale Transaction, the Debtors may discover certain contracts inadvertently omitted from the Designated Contracts list or Successful Bidder(s) may identify other executory contracts or unexpired leases that they desire to assume and assign in connection with the Sale.  Accordingly, the Debtors have reserved the right to (i) supplement the list of Designated Contracts on this Notice of Assumption and Assignment with previously omitted Designated Contracts in accordance with the definitive agreement for the Sale of the Subject Assets and (ii) remove a Designated Contract from the list of contracts ultimately selected to be assumed and assigned by the Successful Bidder in connection with the Sale of the Subject Assets.

     **PLEASE BE FURTHER ADVISED** that in the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly serve a supplemental notice of assumption and assignment (a "Supplemental Notice of Assumption and Assignment") by electronic transmission, hand delivery, or overnight mail on the counterparty (and its attorney, if known) to each impacted Designated Contract at the last known address available to the Debtors.  The Cure Objection Deadline for a Non-Debtor Counterparty that receives a Supplemental Notice of Assumption and Assignment designating a previously omitted executory contract or unexpired

leases for assumption and assignment shall be fourteen (14) days from the date that the Supplemental Notice of Assumption and Assignment is served on the Non-Debtor Counterparty (the "Additional Cure Objection Deadline") (or such other date authorized by the Court as specified  in the Supplemental Notice of Assumption and Assignment).  Other than meeting the Additional Cure Objection Deadline, Cure Objections relating to a Supplemental Notice of Assumption and Assignment shall meet all requirements of a Cure Objection set forth herein.

   **PLEASE BE FURTHER ADVISED** that any objections to the adequate assurance of future performance by the Stalking Horse Purchaser and/or another Successful Bidder(s) under the applicable Designated Contract(s) must be filed with the Court and served on the Notice Parties and the applicable Successful Bidder(s) so that such objection is received on or before **12:00 p.m. (prevailing Central Time) one (1) day prior to the Sale Hearing** (the "Adequate Assurance Objection Deadline").

   **PLEASE BE FURTHER ADVISED** that unless a Cure Objection or an objection to adequate assurance of future performance, as applicable, is filed and served by a Non-Debtor Counterparty to any Designated Contract by the Cure Objection Deadline or the Adequate Assurance Objection Deadline, as applicable, such Non-Debtor Counterparty shall be (i) deemed to have waived and released any right to assert a Cure Objection and to have otherwise consented to the assignment of such Designated Contract, (ii) forever barred from objecting to the assumption and assignment of such Designated Contract or the failure of the Successful Bidder(s) to provide adequate assurance of future performance and (iii) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount listed on the Cure Schedule.

   **PLEASE BE FURTHER ADVISED** that the hearings with respect to Cure Objection(s) or objection(s) to the adequate assurance of future performance may be held (a) at the Sale Hearing, or (b) at such other date as the Court may designate.

   **PLEASE BE FURTHER ADVISED** that all requests for information concerning the Sale should be in writing and directed to counsel to the Debtors at the address referenced below.

Dated: _____, 2016          Respectfully submitted,
        St. Louis, Missouri

                                        CARMODY MACDONALD P.C.

                                        _____

                                        Christopher J. Lawhorn, # 45713MO
                                        Angela L. Drumm, #57678MO
                                        Colin M. Luoma, #65000MO
                                        120 S. Central Avenue, Suite 1800
                                        St. Louis, Missouri  63105
                                        Telephone:  (314) 854-8600
                                        Facsimile: (314) 854-8660
                                        cjl@carmodymacdonald.com
                                        ald@carmodymacdonald.com
                                        cml@carmodymacdonald.com

                                        Local Counsel to the Debtors and
                                        Debtors in Possession

                                        - and -

                                        PAUL, WEISS, RIFKIND, WHARTON &
                                        GARRISON LLP
                                        Alan W. Kornberg
                                        Elizabeth R. McColm
                                        Sarah Harnett
                                        1285 Avenue of the Americas
                                        New York, New York  10019
                                        Telephone:  (212) 373-3000
                                        Facsimile:  (212) 757-3990
                                        akornberg@paulweiss.com
                                        emccolm@paulweiss.com
                                        sharnett@paulweiss.com

                                        Counsel to the Debtors and
                                        Debtors in Possession

## Exhibit A

**Cure Schedule**

| Name of Contract | Name of Non-Debtor Counterparty | Cure Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |